CADWELL INDUSTRIES, INC., a Washington corporation; Cadwell Laboratories, Inc., a Washington corporation, Plaintiffs,

v.

CHENBRO AMERICA, INC., a California corporation; Chenbro Micom Co., Ltd., a Taiwanese corporation; GE Plastics Japan, Ltd., a Japanese corporation; Hipro Electronics (Taiwan) Co., Ltd., a Taiwanese corporation; and Canal Electronic Co., Ltd., a Taiwanese corporation, Defendants.

No. CS–97–0420–EFS.

United States District Court, E.D. Washington.

Sept. 1, 2000.

William A. Kinsel, Hight Green & Yalowitz, Seattle, WA, for plaintiffs.

Michael Alan Nelson, Johnson Law Group PS Inc., Spokane, WA, for Chenbro America, Inc., defendant.

Richard C. Robinson, Lee Smart Cook Martin & Patterson, PS, Seattle, WA, for Chenbro Micom Co., Ltd., defendant.

William E. Fitzharris, Jr., Peery Hiscock Pierson Kingman & Peabody Inc. PS, Seattle, WA, for Hipro Electronics (Taiwan) Co., Ltd.

Stephen J. Plowman, Seattle, WA, for Canal Electronic Co., Ltd.

Richard W. Kuhling, Paine Hamblen Brooke Coffin Miller, Spokane, WA, Margaret C. Wojciechowski, Northbrook, IL, for Underwriters Laboratories, Inc.

## ORDER GRANTING PLAINTIFFS' MOTIONS TO STRIKE AFFIDAVIT AND FOR PARTIAL SUMMARY JUDGMENT

SHEA, District Judge.

On July 28, 2000, the Court heard argument on Plaintiffs' Motion to Strike Affidavit of Minnie Wang, (Ct.Rec.236), and Plaintiffs' Motion for Partial Summary Judgment Against Chenbro America, (Ct. Rec.222). Plaintiffs Cadwell Industries, Inc. and Cadwell Laboratories, Inc. (hereafter "Cadwell") were represented by William A. Kinsel. Defendant Chenbro America, Inc. was represented by Michael A. Nelson. William E. Fitzharris, representing Defendant Hipro Electronics Co., Ltd., attended the hearing by telephone. This Order memorializes and supplements the oral ruling of the Court.

## I. BACKGROUND

On November 20, 1995, a fire occurred in Cadwell's manufacturing facility in Kennewick, Washington. The blaze started in a Zeos Pantera 90 mini-tower computer that Cadwell had received in the first part of the month. Apparently, an electrical fault in the on/off switch of the computer's power supply ignited the front bezel of the mini-tower's chassis. The bezel burned readily, creating soot that damaged Cadwell's stock and equipment. The plastic from which the bezel was made had a 94 HB rating, the lowest flammability rating in Standard for Safety UL 1950.

Zeos, a division of Micron Electronics, Inc., purchased, rather than manufactured, the chassis used in Cadwell's mini-tower. Cadwell asserts that Chenbro America and Chenbro Micom acted in concert with each other in the supply of the chassis to Zeos and, ultimately, in its sale to Cadwell. (Second Am. Compl., Ct. Rec. 136, ¶ 6.) The following facts are relevant in that regard. The chassis, assigned a model number of A6601, is marketed under the trade name "Chenbro" and was stamped with the Chenbro Group's trademark. The Chenbro Group is an assemblage of companies including Chenbro America and Chenbro Micom. Both Chenbro America and Chenbro Micom use the Chenbro Group's trademark in their ordinary course of business. The internet address listed on Chenbro America's business card leads directly to the Chenbro Group website. Chenbro America has explicitly portrayed itself to customers either as the

North American "branch office" of Chenbro Micom or as one of three co-equal subsidiaries of the Chenbro Group. All of Chenbro America's shareholders hold stock in Chenbro Micom; together, they hold roughly 59% of Chenbro Micom's stock. Some of the same people hold high-level positions in both Chenbro America and Chenbro Micom. Mei–Chi Chen owns 20% of Chenbro America and 20.87% of Chenbro Micom. She is the President/CEO and a Director of Chenbro America as well as the General Manager of Chenbro Micom. (Pl.'s Statement Material Facts, Ct. Rec. 225, ¶ 13.) Feng–Ming Chen, the brother of Mei–Chi Chen, owns 20% of Chenbro America and 20.88% of Chenbro Micom. He is the CFO and a Director of Chenbro America and the President of Chenbro Micom. (Ct. Rec. 225 ¶ 14.)

Chenbro Micom manufactures the A6601. (Answer, Ct.Rec.150, ¶¶ III, XIX.) Although Chenbro America apparently does no actual manufacturing, it uses the ISO 9001, ISO 9002, and ISO 14000 manufacturing certification marks on its stationary and business cards. In June 1994, Chenbro America issued a purchase order on which it refers to itself as a "computer cases manufacturer." Chenbro America has also forwarded to customers a Parts Safety List, printed on its own stationary and displaying the Chenbro Group trademark, that specifically identifies the type of plastic used in the front bezel of the A6601.

Chenbro America, a sales agent for Chenbro Micom, has apparently sold a large number of the A6601 chassis. In 1995 alone, Chenbro Micom sold to Chenbro America over 11,900 of the A6601 chassis. In 1994 and 1995, Chenbro America acted as a sales agent for Chenbro Micom with respect to Micron. However, for purposes of the instant summary judgment motion, Cadwell assumes that Chenbro America did not sell Zeos the particular chassis that was part of Cadwell's mini-tower computer.

## II. MOTION TO STRIKE AFFIDAVIT OF MINNIE WANG

On June 20, 2000, Cadwell filed a motion to strike paragraphs 3 through 14 of the Affidavit of Minnie Wang, (Ct.Rec.234), on the ground that Ms. Wang lacks the personal knowledge required by Federal Rule of Civil Procedure 56(e) and Federal Rule of Evidence 602 for the matters asserted to be admissible. Chenbro America had filed the affidavit in opposition to Cadwell's summary judgment motion. Chenbro America filed no response to Cadwell's motion to strike.

Affidavits opposing summary judgment motions must be made on personal knowledge, must set forth such facts as would be admissible in evidence, and must affirmatively show that "the affiant is competent to testify to the matters stated therein." Fed.R.Civ.P. 56(e). Under the Federal Rules of Evidence, a witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. See Fed.R.Evid. 602. The Court may consider a party's failure to timely file a memorandum of points and authorities in opposition to a motion as consent by that party to the entry of an order adverse to the party's interests. See LR 7.1(h)(6).

In support of its motion to strike, Cadwell filed the compressed transcript of Ms. Wang's deposition. (Ct. Rec. 235 Tab 24.) The transcript reveals that Ms. Wang has worked as a consultant for Chenbro America an average of ten hours a week since May 1, 1999. In that capacity, Ms. Wang mainly signs checks but also advises on employment regulations and requirements. At her deposition, Ms. Wang was often tentative with her answers and often stated that others at Chenbro America would know more than she about the question asked. Comparing the deposition with the affidavit, the Court finds that the affidavit contains stronger, clearer statements than Ms. Wang made during her deposition. This difference, Ms. Wang's comparatively limited work history with Chenbro Amer-

ica, and the absence of a response from Chenbro America indicate that Ms. Wang's affidavit is not based on personal knowledge. Accordingly, the Court GRANTS Plaintiffs' Motion to Strike Affidavit of Minnie Wang.

## III. MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST CHENBRO AMERICA

Cadwell moves for summary judgment on the issue of whether Chenbro America is a "manufacturer" of Cadwell's mini-tower chassis for purposes of Cadwell's product liability claims under the Washington Product Liability Act ("WPLA"), Wash. Rev.Code § 7.72.010 *et seq.* Cadwell does not assert that Chenbro America made the Cadwell chassis and, for purposes of this summary judgment motion, assumes that Chenbro America did not sell the Cadwell chassis to Zeos. Rather, Cadwell asks the Court to find that Chenbro America is a "manufacturer" under the WPLA because it *has held and does hold itself out as* the manufacturer of that chassis.

### A. The Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgement as a matter of law." Fed.R.Civ.P. 56(c). The moving party has an initial burden of showing that there is no genuine issue of material fact by "identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A dispute about a material fact is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If the evidence is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50, 106 S.Ct. 2505. It is not the court's function at the summary judgment stage to determine credibility or decide the truth of the matter. *See id.* at 249, 255, 106 S.Ct. 2505. Rather, "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255, 106 S.Ct. 2505.

### B. Discussion

The WPLA defines "manufacturer" to include

a product seller who designs, produces, makes, fabricates, constructs, or remanufactures the relevant product or component part of a product before its sale to a user or consumer. *The term also includes a product seller or entity not otherwise a manufacturer that holds itself out as a manufacturer.*

Wash. Rev.Code Ann. § 7.72.010(2) (West 1992) (emphasis added).

As an initial matter, the Court resolves the issue of what constitutes the "relevant product," as that phrase is used in § 7.72.010(2), for purposes of this motion. The WPLA defines the "relevant product" as "that product or its component part or parts, which gave rise to the product liability claim." Wash. Rev.Code Ann. § 7.72.010(3) (West 1992). In its Second Amended Complaint, Cadwell identifies the "relevant product" for its WPLA claims against Chenbro America and Chenbro Micom as the A6601 computer chassis that was incorporated into the Zeos Pantera 90 computer. (Ct. Rec. 136 at 8 ¶ 29.) Chenbro America concurred that an A6601 chassis is the "relevant product" under the WPLA. (Answer, Ct. Rec. 160, at 4 ¶ XVII.) However, Chenbro America now asserts that its admission that an A6601 chassis is the "relevant product" was an admission for purposes of this suit, but not for purposes of the instant summary judgment motion. For purposes of this motion, Chenbro America asserts that the "relevant product" is the front bezel

piece of the Cadwell chassis because that bezel was specially manufactured for Zeos.

The WPLA defines the "relevant product" as that product or component which gave rise *to the product liability claim.* The Court declines to find that a different definition of "relevant product" can apply to motions than applies to the entire case. Since Chenbro America admitted that an A6601 chassis is the "relevant product" for Cadwell's WPLA claims, the A6601 computer chassis that was incorporated into the Zeos Pantera 90 computer is the "relevant product" for purposes of this motion.

Turning now to the issue of whether Chenbro America is a "manufacturer" under § 7.72.010(2), the Court must resolve two issues: (1) whether an "entity not otherwise a manufacturer" must be a product seller to be a "manufacturer," and (2) what actions "an entity not otherwise a manufacturer" must take to "hold itself out as a manufacturer."

■ Consideration of the WPLA as a whole reveals that an "entity not otherwise a manufacturer" need not be a product seller to be a manufacturer. The word "entity" appears in the WPLA in only three contexts, all of which are definitions. The first is the definition of "manufacturer." The second is the definition of "product seller." A "product seller" is

> any person *or entity* that is engaged in the business of selling products, whether the sale is *for* resale, or *for* use or consumption. The term includes a manufacturer, wholesaler, distributor, or retailer of the relevant product. The term also includes a party who is in the business of leasing or bailing such products.

Wash. Rev.Code Ann. § 7.72.010(1) (West 1992) (emphasis added). The third is the definition of "claimant," where a "claimant" is

> a person *or entity* asserting a product liability claim, including a wrongful death action, and, if the claim is asserted through or on behalf of an estate, the term includes claimant's decedent. "Claimant" includes any person *or entity* that suffers harm. A claim may be as-

serted under this chapter even though the claimant did not buy the product from, or enter into any contractual relationship with, the product seller.

Wash. Rev.Code Ann. § 7.72.010(5) (West 1992) (emphases added). The repeated use of the word "entity" and the absence of a definition of that term in the WPLA suggest that the word is to be given its regular meaning. Black's Law Dictionary defines "entity" as "[a]n organization (such as a business or governmental unit) that has a legal identity apart from its members." *Black's Law Dictionary* 553 (7th ed.1999). Applying that definition to the WPLA's definition of "manufacturer," the Court finds that an "entity not otherwise a manufacturer" need not be a product seller but need only be an organization with a legal identity separate from its members. Chenbro America is admittedly an incorporated business. As such, it is an organization with a legal identity separate from its members. Viewing the facts in favor of the non-moving party, the Court assumes that Chenbro America is "not otherwise a manufacturer" under the WPLA and that Chenbro America is therefore an "entity not otherwise a manufacturer" within the meaning of the WPLA.

■ No Washington case discusses what actions "an entity not otherwise a manufacturer" must take to "hold itself out as a manufacturer." Cadwell, noting that Washington courts have relied on Illinois common law to elucidate the WPLA, draws six factors from *Connelly v. Uniroyal,* 75 Ill.2d 393, 27 Ill.Dec. 343, 389 N.E.2d 155 (1979), *Hebel v. Sherman Equip.,* 92 Ill.2d 368, 65 Ill.Dec. 888, 442 N.E.2d 199 (1982), and *Ogg v. City of Springfield,* 121 Ill. App.3d 25, 76 Ill.Dec. 531, 458 N.E.2d 1331 (1984), *inter alia,* for use in determining whether an entity "holds itself out as a manufacturer" under the WPLA. Upon review of the cited Illinois cases, the Court finds that Cadwell's six factors are more properly grouped into the following five considerations: (1) whether the entity labels or affixes to the product its own name,

trade name, or trademark; (2) whether the entity identifies itself on advertisements or promotional literature as the maker of the product; (3) whether the entity participates in the manufacture, marketing and distribution of the product; (4) whether the entity derives economic benefit from placing the product in the stream of commerce; and (5) whether the entity is in a position to eliminate the unsafe character of the product. These five factors must be judged "from the viewpoint of the purchasing public, and in light of circumstances as of the time of purchase." *Hebel,* 92 Ill.2d at 375, 65 Ill.Dec. 888, 442 N.E.2d 199.

In response, Chenbro America cites *Wagner v. Beech Aircraft,* 37 Wash.App. 203, 209–11, 680 P.2d 425 (1984), for the proposition that Washington courts have not followed *Connelly* but have held that one must be in the "chain of distribution" to be held strictly liable. At issue in *Wagner* was whether a seller could be indemnified by a manufacturer. The court found that "the same standards which govern the ultimate liability of the manufacturer who markets a defective product under the doctrine of strict liability should apply in determining whether indemnity will be permitted." *Id.* at 209, 680 P.2d 425. In support of its conclusion, the court reasoned that

> 'the injured party could have sued the manufacturer, just as well as the party down the distributive chain who sold the product to the injured user. The manufacturer should not be able to escape liability because of this fortuitous selection of defendants by the injured party, and the immediate seller, if sued by the buyer, should be able to get indemnity from the manufacturer.'

*Id.* at 210, 680 P.2d 425 (quoting 2 L. Frumer and Mr. Friedman, Products Liability, sec. 16A(4)(b)(i)). The Court finds that *Wagner* concerns a manufacturer who markets a product but does not set forth a requirement that an entity must actually manufacture, distribute or sell a product to qualify as a manufacturer under the WPLA. Accordingly, the Court concludes that Washington courts have not rejected

*Connelly* and hereby adopts the five factors set forth in Illinois case law for use in determining whether an entity "holds itself out as a manufacturer" under the WPLA. The Court now considers each factor in turn to determine whether Chenbro America held itself out as the manufacturer of the Cadwell chassis.

### *(1) Labeling or Affixing Name or Trademark to the Product*

██ This factor supports a finding that an entity holds itself out as a product manufacturer if the entity affixes its trademark to the product. *See Hebel,* 92 Ill.2d at 372, 65 Ill.Dec. 888, 442 N.E.2d 199. Here, the Cadwell mini-tower chassis was stamped with the Chenbro Group's trademark. Admittedly, Chenbro America itself did not print the trademark on the chassis. Further, the trademark is not used solely by Chenbro America. However, Chenbro America uses the Chenbro Group's trademark, and no other, on its business cards, stationary, and office door. There is no evidence that Chenbro America uses the trademark without the permission of Chenbro Micom or the Chenbro Group. The Court therefore finds that, as a matter of law, the Chenbro Group's trademark is Chenbro America's trademark.

There is a difference between an entity affixing its trademark to a product and an entity allowing its trademark to be affixed to a product. However, the Court finds that the difference is not significant in this situation and that this factor favors a finding that Chenbro America held itself out as the chassis manufacturer.

### *(2) Identifying Self as the Maker of the Product*

██ This factor supports a finding that an entity holds itself out as a product manufacturer if the entity identifies itself as the maker of the product on product literature or advertising. *See Hebel,* 92 Ill.2d at 372, 65 Ill.Dec. 888, 442 N.E.2d 199; *Ogg,* 121 Ill.App.3d at 32–33, 76 Ill.

Dec. 531, 458 N.E.2d 1331. An entity holds itself out to the public as the manufacturer if "[its] advertising was such as to lead a reasonable purchaser to believe that the defendant and not some other party, was the actual manufacturer." *Hebel,* 92 Ill.2d at 377, 65 Ill.Dec. 888, 442 N.E.2d 199.

Printed documents issued by Chenbro America specifically state that Chenbro America is a computer case manufacturer and generally imply that Chenbro America is some type of manufacturer. A June 1994 purchase order refers to Chenbro America as a "computer cases manufacturer." Chenbro America's business cards and stationary include the ISO 9001, ISO 9002, and ISO 14000 manufacturing certification marks. Chenbro America therefore clearly holds itself out as a computer case manufacturer. A closer question is whether Chenbro America holds itself out as the maker of the A6601 chassis. Chenbro America has forwarded to customers a Parts Safety List that is printed on its own stationary, displays the Chenbro Group trademark, and specifically identifies the type of plastic used in the front bezel of the A6601. (Ct. Rec. 225 Tab 10 at 1.) The sheet lacks any reference to a manufacturer and shows no signs of being a reprint of information provided by another entity. This suggests that Chenbro America is the manufacturer of the A6601. However, even taking the purchase order, business cards and parts Safety List together, the Court finds it is a close question whether a reasonable purchaser would believe Chenbro America was the actual manufacturer of the A6601. Accordingly, the Court deems this factor to be neutral on the issue of whether Chenbro America held itself out as the chassis manufacturer.

### (3) Participation in Manufacture, Marketing and Distribution

This factor supports a finding that an entity holds itself out as a manufacturer if the entity participates in the manufacture, marketing and distribution of the product. *See Hebel,* 92 Ill.2d at 379, 65 Ill.Dec. 888, 442 N.E.2d 199. Chenbro America di-

rectly participates in the marketing and distribution of the A6601 chassis: it has purchased from Chenbro Micom and apparently distributed over 11,9000 of the A6601 chassis; it also serves as a sales agent for Chenbro Micom.

Although Chenbro America itself does no manufacturing, it does participate in the manufacture of the A6601. Actual manufacturing is not required since, as is discussed above, an entity need not actually manufacture a product to be its "manufacturer" under § 7.72.010(2). Chenbro America's participation in the manufacture of the A6601 chassis is demonstrated by its sales agent functions. Chenbro America informs potential customers of the A6601's specifications and the alternative plastics from which the chassis' front bezel can be made, (Ct. Rec. 225 Tab 10 at 1). Presumably, were a customer to require the use of one of the specified plastics, Chenbro America would transmit that information to Chenbro Micom. Participation is also demonstrated by Chenbro America's integral link to Chenbro Micom and the Chenbro Group: Chenbro America uses the Chenbro Group's trademark; the internet address on Chenbro America's business card connects to the Chenbro Group website; and Chenbro America explicitly portrays itself to customers as the North American "branch office" of Chenbro Micom or as one of three co-equal subsidiaries of the Chenbro Group.

Because Chenbro America participates in the marketing, distribution and manufacture of the A6601, this factor favors finding that Chenbro America held itself out as the chassis manufacturer.

### (4) Deriving Economic Benefit from Product

This factor supports a finding that an entity holds itself out as a manufacturer if it derives economic benefit from placing the product in the stream of commerce. *See Connelly,* 75 Ill.2d at 411, 27 Ill.Dec. 343, 389 N.E.2d 155; *Hebel,* 92 Ill.2d at 379, 65 Ill.Dec. 888, 442 N.E.2d 199; *Ogg,*

121 Ill.App.3d at 32–33, 76 Ill.Dec. 531, 458 N.E.2d 1331. Here, it is clear that Chenbro America derives economic benefit from selling A6601 chassis. In 1995 it apparently sold over 11,900 chassis. Furthermore, each Chenbro America stock holder holds stock in Chenbro Micom, with Chenbro America stock holders, as a group, holding roughly 59% of Chenbro Micom's shares. Thus all Chenbro America stock holders also receive a share of the profit that Chenbro Micom derives from Chenbro America's A6601 chassis sales. Accordingly, this factor favors finding that Chenbro America held itself out as the chassis manufacturer.

### (5) Positioned to Eliminate the Product's Unsafe Character

This factor supports a finding that an entity holds itself out as a manufacturer if the entity is in a position to eliminate the unsafe character of the product. *See Hebel*, 92 Ill.2d at 379, 65 Ill.Dec. 888, 442 N.E.2d 199; *Ogg*, 121 Ill.App.3d at 32–33, 76 Ill.Dec. 531, 458 N.E.2d 1331. In *Ogg*, the court implicitly found that an entity exercised some control over product design, and hence was in a position to eliminate the product's unsafe character, because it (1) acquired all of the manufacturing company's stock, (2) installed one of its own officers as the manufacturing company's president and board chairman, (3) required the manufacturing company to hold monthly product development committee meetings, and (4) through its chief executive officers, received copies of the design committee's minutes and attended several meetings. 121 Ill.App.3d at 33, 76 Ill.Dec. 531, 458 N.E.2d 1331.

Here, there is no evidence that Chenbro America provides input on the development of Chenbro products beyond transmitting customer orders to Chenbro Micom. However, the same person serves as Chenbro America's President/CEO and as Chenbro Micom's General Manager. That person's brother is both Chenbro America's CFO and Chenbro Micom's President. Additionally, Chenbro America stockholders hold 59% of Chenbro Micom shares.

On this basis, the Court finds that, as a matter of law, Chenbro America is in a position to require the A6601's front bezel to be manufactured from a less flammable plastic, such as the self-extinguishing, V–0 rated plastic identified as an option on the Parts Safety List. Accordingly, Chenbro America is in a position to eliminate the unsafe character of the A6601 chassis. This factor favors finding that Chenbro America held itself out as the chassis manufacturer.

### Conclusion

Of the five factors, four support finding as a matter of law that Chenbro America holds itself out as a manufacturer of the Cadwell chassis. On this basis, the Court holds that Chenbro America is a manufacturer under the WPLA because it holds itself out as a manufacturer. Accordingly,

**IT IS HEREBY ORDERED:**

1. Plaintiffs' Motion to Strike Affidavit of Minnie Wang, (**Ct.Rec.236**), is **GRANTED.** Paragraphs 3 through 14 of the Affidavit of Minnie Wang, included in the record as Ct. Rec. 234 and as Exhibit 5 to Ct. Rec. 233, shall be **STRICKEN.**

2. Plaintiffs' Motion for Partial Summary Judgment Against Chenbro America, (**Ct.Rec.222**), is **GRANTED.**

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order and provide copies to counsel.